By the Court, Monell, J.
As I understand the ground upon which the learned justice who tried this action, placed his decision in dismissing the complaint, it was, that the' purchase of coal, which formed the consideration of the notes, was made by J. Howard & Son, for the use of the several steamships of which they were the agents, and was, therefore, the joint debt of themselves and the other owners; and assuming that the clear weight of the evidence established such defense, there was nothing for the jury to determine. Putting his decision upon that ground alone, we must presume that he did not regard the evidence bearing upon the plaintiff’s ownership of the notes, as sufficient to invalidate his title.
The only questions, therefore, to be examined are, first, whether the defendant could avail himself of such defense ? and second, whether the evidence in support of it is so preponderating as to-justify its withdrawal from the jury.
If I comprehend the answer and the proof given in its support, they establish a joint liability of the defendant and the other owners of the steamships, but do not make out a partnership. . (Pars, on Part. 548, 549.) The allegations are that the coal was purchased for the use of the several ships, by the defendants, as ' the agents of the owners. Such a purchase and for such a purpose, would render all the owners jointly liable, and all would be required to be parties to an action to recover the debt. But this action is not to recover the original debt, but upon two promissory notes given by the defendants individually for the purchase price of the coal and the freight thereon.
To let - in any defense which would defeat a recovery upon such notes, it was necessary to impeach the plaintiff’s *405 title by showing that he was not a bona fide holder; for if he received the notes for value, without notice, the facts now insisted upon would not constitute a defense.
The only evidence relied upon, as establishing notice to the plaintiff, is contained in the original complaint, the sufficiency of which I will presently consider. Smith, from whom the plaintiff received the notes, testified, substantially, that he purchased them from Tibbitts the payee, before maturity, without any notice or knowledge that they were given for a joint debt of the several owners. And the defendant did not pretend that Smith had any such notice, and wholly failed to furnish any proof that would impair the plaintiff’s title as a bona fide holder, unless the original complaint funishes such proof. It was claimed, however, that such original complaint, in which ■ all the owners were parties, and which was verified by the plaintiff in the usual manner, contained an admission of all the facts now'set forth as a defense to the action, and conclusively proved notice to the plaintiff of the origin and consideration of the notes.
The notes were given by and in the name of J. Howard & Son, and the most that was or can be claimed by the defendants is, that they were given for the joint debt of the several owners of the steamship line. It was not alleged in the answer, nor was any proof given, that the several owners of the ships were in partnership. On the contrary, it appeared, very distinctly, that the firm of J. Howard & Son, was composed of the defendant and Joseph Howard, and that they gave'the notes in their firm name, as the agents and ships’ husbands of the line, and for the benefit of the owners thereof.
The question then arises whether the defendant can insist that his co-debtors should be made parties to this suit?
Independently of the objection which I will presently *406 state, it seems to me the defendant would encounter this difficulty—-that the owners of the several ships forming the line were not the same. The coal was purchased for all the ships and furnished to each, as required. It was not sold to either company; nor was it sold to all the companies, so as to create a joint liability of all the owners. Each company might be accountable for the portion it received, if the vendor had the means of ascertaining such portion, but such means could be obtained only through the vendees, if they chose to furnish it. The vendor could not recover it. But I apprehend if the attempt should be made to collect from the several companies, the plaintiff would be met with the proof furnished on this trial, that J. Howard & Son were to furnish the coal, and that each ship was to have charged to it the quantity of coal it received.
It seems to me, therefore, a joint action could not have been sustained against all the owners. According to the whole theory of the evidence, the liability was several and not joint, for which, even under the liberal provisions of the Code, a joint action would not lie.
But without enlarging upon the difficulty suggested, there is another which in my opinion is insurmountable.
The notes were in the usual form, and signed. “J. Howard & Son,” and there was nothing upon their face to indicate that the makers were not to be held responsible as principals. If a maker does not sign as agent, or if by the terms of the note it do not clearly appear that he is an agent, he will be deemed to have contracted in his personal capacity, even though he discloses his agency to the payee. (1 Pars, on Notes, 92. Story on Ag. § 155. Story on Bills, § 76. Pentz v. Stanton, 10 Wend. 270. Mills v. Hunt, 20 id. 431. Evans v. Wells, 22 id. 324. Taber v. Cannon, 8 Metc. 456. Hyde v. Paige, 9 Barb. 150. Ranken v. Deforest, 18 id. 143.)
*407 In Tabor v. Cannon, the agents of a whale ship, purchased supplies for her voyage, and the seller drew a bill for the amount addressed to the “ agent and owners.” The drawee (the agent) accepted the bill without any addition indicating his agency, and it was held that he alone was liable as acceptor. Hyde v. Paige, was even a stronger case. There the agent gave his note after having fully disclosed that he was purchasing the hay for his principal, and an action against the latter was- defeated.
These are well established principles applicable to ordinary agencies. In their application to ships’ husbands they are still stronger, and the master or agent is liable for supplies, as well as the owner. (Dunlap’s Paley or Agency, 387, note.)
I have already said there was no proof that the several ship owners were partners under the style of J. Howard & Son. It was not so claimed in the answer, nor pretended by the defendant in his evidence. On the contrary all the proof on that subject showed conclusively that the firm of J. Howard & Son was composed of the defendant and his deceased father, and the utmost extent of the defendants’ claim was, that there was a joint liability of all the owners.
That the defendants were co-owners, and as such liable jointly with the other owners, does not change the liability which they voluntarily assumed, when they gave their individual note for a joint debt; nor does such part ownership affect the position which the defendant occupied as ships’ husband. (Pars, on Part. 569.) A note given by a partner in his individual name for a partnership debt, will not bind the partnership. (Id. 215, and cases cited.)
Had there been proof that the several owners of the steamship line were partners under the name or firm of J. Howard & Son, then of course, the joinder of all such owners would be necessary in an action upon the notes. *408 But all the evidence is the other way, and I think the learned justice fell into the error of applying the rules relating to partnerships and not the rules relating to mere j oint liabilities. I think he also overlooked the undisputed evidence that the defendants were the ships’ husbands, and as such, personally assumed the debt, which, within the principles I have stated, discharged their co-owners from liability upon the notes.
I have not overlooked the fact that the original complaint contains the allegation that the business of the steamship line was all transacted on behalf of the owners, under the firm name of J. Howard & Son. But such allegation is not an averment of a partnership between such owners under such firm name; nor is it capable of any such construction. If taken by itself, it' can be made to mean no more than is stated, namely, that this Pacific line of steamers, owned by different persons, had a business office in the city of Hew York, and known as the office of J. Howard & Son, where the business of the line was mainly transacted, under the name of J. Howard & Son, under which name the owners contracted for coal and supplies, issued notes and generally did all the business of the line at the city of Hew York. If, however, the allegation is taken, as I think it must he, in connection with other parts of the complaint, it clearly appears that J. Howard & Son, were the ships’ husbands, and as such, transacted the business of the line in their own names. Thus overcoming all force which might otherwise be given to the previous averments.
It will be observed that all the facts stated in the original complaint, are stated to be upon the “informa-tion and belief” of the plaintiff, and facts thus stated are relied on as an admission of sufficient notice to the plaintiff to let in the defense. In my judgment it utterly fails of the object. To invalidate the plaintiffs’ claim to be a *409 bona fide holder, it was necessary to show that he, or Smith from whom he received the notes, had notice at the time they were received. It can not he pretended that the complaint, treating it as an admission of the plaintiff, contains any such proof. And there is no other.
There was nothing, therefore, to invalidate the plaintiff’s title to the notes, and the plaintiff, irrespective of all other questions, was entitled to recover.
If the view I have taken of the law is correct, it renders a reversal of the judgment necessary, and the question, whether in any view of the law, there was such a clear and preponderating weight of evidence, as to justify the withdrawal of all questions of fact from the jury, need not be examined.
The judgment must be reversed, and a new trial ordered, with costs to abide the event.
Robertson, Ch. J.
I am unable to perceive any valid defense set up by the answers in this case, except the denial of the plaintiff’s ownership of the notes set out in the complaint; which was not sustained on the trial. It is utterly immaterial, that the consideration of such notes consisted of goods furnished for vessels of which “ J. Howard & Son,” the makers of the notes, were ships’ husbands, and that other persons were joint owners of such vessels. That state of things might make the latter also liable if the notes in question had not been received as absolute payment, but it would not relieve the defendant. All questions as ,tq the regularity of prior proceedings in the action were set at rest by the amendment of the complaint, omitting some of the parties originally added as defendants.
The only possible ground upon which the evidence as to the ownership of the vessels in question could have been admissible on the trial was, to prove a different part *410 nership for buying supplies for such vessels and chartering and managing them, under the same name, from that used by the defendant and his deceased partner, for their private business, and that such note was made by such other firm. There is, perhaps, something which might be distorted into an allegation to this effect in the complaint, which alleges that the defendant and his deceased partner did all the business therein mentioned under their firm name of “J. Howard & Son.” But the only evidence, in that direction, which consists of the testimony of the defendant himselfj does not come up to such a statement; it only shows that he acted as agent and gave the firm’s notes for stores furnished. It ought to,- and might, have been excluded as immaterial.
Even, however, if such a second partnership had been created under the same name, the other parties interested were secret or dormant partners, and the plaintiff was not bound to join them in the action as defendants. (De Mautort v. Saunders, 1 Barn. & Ad. 398. Mullet v. Hook, Mood. & Mal. 88. Baldney v. Ritchie, 1 Starkie, 338. Doo v. Chippensen, Abb. on Ship. 84. Colson v. Selby, 1 Esp. 452.)
I concur, therefore, in thinking the judgment of dismissal of the complaint was erroneous, and should be reversed, and a new trial had.